UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

HARBOUR VICTORIA INVESTMENT
HOLDINGS LTD.,

        Petitioner,

 -v-                                                   No.  15 CV 3212-LTS

KABUL CHAWLA and BPTP, LTD.,

        Respondents.

--------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Petitioner Harbour Victoria Investment Holdings Ltd. ("HVIH" or "Petitioner") brings this action to confirm an arbitral award against Kabul Chawla and BPTP Ltd. (collectively, "Respondents").[1] The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203.

Currently before the Court is Respondents' motion to dismiss the Petition: (1) for lack of personal jurisdiction, under Federal Rule of Civil Procedure 12(b)(2); (2) for ineffective service of process, under Federal Rule of Civil Procedure 12(b)(5); and (3) under the doctrine of forum non conveniens. The Court has carefully considered the parties' submissions, and for the following reasons, Respondents' motion to dismiss the Petition is granted to the extent it seeks dismissal of the Petition for lack of personal jurisdiction.[2]

---

[1]  This action was initially brought against a number of additional Respondents, all of whom have been dismissed by stipulation. (See docket entry no. 62.)

[2]  Petitioner consents to Respondents' motion to dismiss the Petition as against BPTP, Ltd., and the Court grants that aspect of the motion. (See docket entry no. 66, at p. 1.) The Court's analysis therefore focuses solely on whether the Court has personal jurisdiction over the remaining Respondent, Mr. Chawla.

BACKGROUND

The following facts relevant to the issue of personal jurisdiction are drawn from declarations submitted by the parties in connection with this motion practice.  Familiarity with the underlying dispute is assumed.

This is an action for confirmation of an arbitral award arising out of disputes among non-U.S. persons and entities that was rendered in London against Respondents.  Mr. Chawla is an Indian national domiciled in India who does not have significant business contacts in New York.  (See docket entry no. 59, Declaration of Tai-Heng Cheng ("Cheng Decl."), Ex. A, at 3.)  The parties' dispute over personal jurisdiction centers on whether general personal jurisdiction over Mr. Chawla was obtained based on service of process while he was physically present in New York.

On April 6, 2015, Mr. Chawla, who had arrived in New York the day before, was present in an apartment that he leases in the Time Warner Center building in Manhattan.  (Cheng Decl., Ex. K, ¶¶ 4, 6.)  That afternoon, while Mr. Chawla was in the apartment, Di Cong Jiang, a process server employed by Petitioner, went to the Time Warner Center to effect service on Mr. Chawla and other Respondents.  (Docket entry no. 14, Affidavit of Di Cong Jiang ("Jiang Aff.").)  Mr. Jiang informed the doorman or concierge at the Time Warner Center that he had a delivery for Mr. Chawla.  (Id.)  The concierge phoned Mr. Chawla.  (Docket entry no. 69, Supplemental Affidavit of Di Cong Jiang ("Supp. Jiang Aff.").)  Mr. Chawla told the concierge that he was resting and that the delivery should be left with the concierge rather than brought up to the apartment.  (Cheng Decl., Ex. K, ¶ 6.)  Mr. Chawla alleges that he also told the concierge to inform Mr. Jiang that he could return later if he wished to bring the delivery directly to the apartment.  Mr. Jiang denies that such a message was conveyed to him.  (Cheng Decl., Ex. T,

¶ 6.; Jiang Aff.; Supp. Jiang Aff.)  After the concierge ended the phone call, Mr. Jiang left the papers he had brought with the concierge.  (Id.)  Two days later, Mr. Jiang mailed a copy of the papers to Mr. Chawla at the Time Warner Center address via first class mail.  (Jiang Aff.)

## DISCUSSION

Respondents' pending motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(5), as well as under the doctrine of forum non conveniens.  As the Court will grant the motion to the extent it rests upon Rule 12(b)(2), the analysis that follows will only address the issue of personal jurisdiction.

Under Federal Rule of Civil Procedure 12(b)(2), a federal court must dismiss claims against a party where the court determines that it does not have personal jurisdiction over that party.  The party asserting jurisdiction (i.e., the non-moving party) "bears the burden of establishing that the court has jurisdiction" over the movant "when served with a Rule 12(b)(2) motion to dismiss."  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

In evaluating a motion to dismiss for lack of personal jurisdiction, the court must first determine whether the exercise of personal jurisdiction is proper according to the law "of the forum state, in this instance New York."  Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir.1997).  If the exercise of jurisdiction is authorized under New York law, the court must then "decide whether such exercise comports with the [federal constitutional] requisites of due process."  Id.

New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") Section 301 provides that New York courts "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  Petitioner invokes "transient" jurisdiction – the traditionally recognized doctrine that a state may exercise jurisdiction of a person present within its borders

when service has been effected – as the basis for its assertion that this Court may exercise general personal jurisdiction over Mr. Chawla.  See, e.g., J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2787 (2011) ("A person may submit to a State's authority in a number of ways. . . . Presence within a State at the time suit commences through service of process is [one] example.").  Petitioner contends that it effected valid service on Mr. Chawla pursuant to the "leave and mail" provision of N.Y. C.P.L.R. Section 308(2), which provides in pertinent part that "[p]ersonal service upon a natural person" may be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by . . . mailing the summons to the person to be served at his or her last known residence."  While the parties disagree as to whether the service that was made complied with section 308(2) in all respects, the Court assumes solely for purposes of the instant motion practice that the service on Mr. Chawla was effective as a matter of New York law.

The Court therefore turns to the federal constitutional question of whether the Court's exercise of personal jurisdiction over Mr. Chawla based solely on this "leave and mail" service while Mr. Chawla was in the state comports with the requirements of due process.

The Supreme Court has directly addressed the constitutional validity of transient jurisdiction only once, in Burnham v. Superior Court of California, County of Marin, 495 U.S. 604 (1990).  That case, although decided unanimously, resulted in a plurality opinion by Justice Scalia, portions of which were joined by Justice White, and separate opinions by Justice White (concurring in part and concurring in the judgment), and by Justices Brennan and Stevens (concurring in the judgment alone).  Id.

In Burnham, the non-resident defendant "was personally served with process"

while visiting within the geographic jurisdiction of the court in question.  Id. at 607.  There is no indication in any of the opinions that the personal service was anything other than physical delivery of process to the defendant.  See id. at 608 ("Upon returning [his] child to Mrs. Burnham's home on January 24, 1988, petitioner was served with a California court summons and a copy of Mrs. Burnham's divorce petition.").

Justice Scalia's plurality opinion principally addressed itself to whether the exercise of personal jurisdiction under the circumstances presented was consistent with "traditional notions of fair play and substantial justice."  Id. at 609 (quoting International Shoe Co. v. Washington, 326 U.S. 310 (1945) (internal punctuation omitted)).  According to the plurality, at least by the time the Fourteenth Amendment was adopted,

> Among the most firmly established principles of personal jurisdiction in American tradition [was] that the courts of a State have jurisdiction over nonresidents who are physically present in the State.  The view developed early that each such State had the power to hale before its courts any individual who could be found within its borders, and that once having acquired jurisdiction over such a person by properly serving him with process, the State could retain jurisdiction to enter judgment against him, no matter how fleeting his visit.

Id. at 610-11.  Conversely, "[t]he view of most courts in the 19th century was that a court simply could not exercise in personam jurisdiction over a nonresident who had not been personally served with process in the forum."  Id. at 617.  Against this historical background, the Court rejected the argument that, notwithstanding the effectuation of service while the defendant was physically present in the forum, additional litigation-related minimum contacts with the forum were required to validate the exercise of jurisdiction.  Id. at 619.  Unlike the Court's approach to the exercise of jurisdiction over absent non-residents, in which such minimum contacts are required, the plurality "conducted no independent inquiry into the desirability or fairness of the prevailing in-state service rule, leaving that judgment to the legislatures that are free to amend it;

Case 1:15-cv-03212-LTS   Document 80   Filed 12/03/15   Page 6 of 8

for our purposes, its validation is its pedigree, as the phrase '*traditional notions* of fair play and substantial justice' makes clear." Id. at 622 (emphasis in original). "[A] doctrine of personal jurisdiction that dates back to the adoption of the Fourteenth Amendment and is still generally observed unquestionably meets that standard." Id.

Burnham, as a plurality opinion, is properly confined to the narrowest holding supported by its facts: namely, that the exercise of personal jurisdiction based on direct physical delivery of process to a person present in the jurisdiction comports with traditional notions of fair play and substantial justice and thus is consistent with constitutional requirements. See Marks v. U.S., 430 U.S. 188, 194 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks omitted)).

While the Burnham Court did not focus specifically on the method of service used in that case, both the facts of the case and the plurality's use of traditional antecedents as a lynchpin of the constitutional analysis suggest that the use of a method of service that both has an historic pedigree and leaves no doubt that the person is in fact properly notified of the lawsuit while present in the forum is likewise a requisite of constitutionally valid transient jurisdiction. Indeed, the parties have not proffered, and the Court's own research has not disclosed, any decision upholding as constitutionally valid the exercise of jurisdiction over a transient served by a substituted method such as "leave and mail." Nor does "leave and mail" appear to have 19th century antecedents as a general method of personal service. While it was authorized by New York law for state "residents," the New York Civil Practice Act ("N.Y. C.P.A.") characterized it as a method of "substituted service," and it was available only by court order. See Rawstorne v.

Maguire, 265 N.Y. 204, 207 (1934); Clevenger's New York Practice 145 (1922) (N.Y. C.P.A. § 230). "Personal service" upon a person other than an infant or one adjudicated incompetent was required to be made "by delivering a copy" of the summons "to the defendant in person." Id. at 138 (N.Y. C.P.A. § 225(1)-(3)). Current CPLR section 308(2), embracing "leave and mail" within the broad rubric of personal service, dates only to the 1960s. See N.Y. C.P.L.R. § 100.05 (provisions of the C.P.L.R. became effective on September 1, 1963).

In addition to the absence of traditional recognition of such service as personal, "leave and mail" also lacks any requirement or element of assurance that the transient defendant receives actual, effective notice of the process while in the state. To meet the New York statutory requirement, process is merely left with a personal of suitable age and discretion at an address associated with the person's abode or business, and mailed to a relevant address. Neither the factual context of Burnham, nor the reasoning of any of its separate concurring opinions, warrants recognition of such substituted service as consistent with the requisites of due process here, where the non-resident Respondent was only temporarily present in the forum and was never even in physical proximity to the process server, who merely left the summons with the doorman of a large residential building and later mailed copies to that address.

Even if Burnham itself does not foreclose the possibility of exercising general personal jurisdiction over non-resident defendants on the basis of leave-and-mail service effected while they happen to be in the state, this Court sees no reason to believe such an exercise of jurisdiction would comport with due process. As the Supreme Court's decision in International Shoe Co. v. Washington, 326 U.S. 310 (1945), makes clear, the foundational question in determining whether an exercise of jurisdiction comports with due process is whether it comports with "traditional notions of fair play and substantial justice." Id. at 316 (emphasis

added).  There is simply no evidence of any tradition, in New York or elsewhere, of using service other than direct physical delivery to obtain general personal jurisdiction over non-resident defendants.  Where, as in International Shoe and its progeny, the Supreme Court has considered the "exercise of jurisdiction over absent defendants in a manner that deviates from the rules of jurisdiction applied in the 19th century," the Court "ha[s] held such deviations permissible, but only with respect to suits arising out of the absent defendant's contacts with the State."  Burnham, 495 U.S. at 610 (footnote omitted).  This is not such a lawsuit.

The Court therefore concludes that exercising personal jurisdiction over Mr. Chawla in this case does not comport with the Constitutional requirement of due process, and the Respondents' motion to dismiss the Petition for lack of personal jurisdiction is granted.

## CONCLUSION

For the foregoing reasons, Respondents' motion to dismiss this action as against the remaining Respondents is granted.  This Order resolves docket entry no. 57.

The Clerk of Court is requested to enter judgment dismissing the Petition for lack of personal jurisdiction over Mr. Chawla and as against the other Respondents on consent of the parties, and close the case.

SO ORDERED.

Dated: New York, New York
December 3, 2015

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge